# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                          Case No. 06-Cr-0118

JOHNNY L. RUFFIN,

    Defendant.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE LYNN ADELMAN

## NATURE OF CASE

On May 15, 2006, a federal grand jury sitting in this district returned a one-count indictment against the defendant. The defendant is charged with being a convicted felon in possession of a firearm which was transported in interstate commerce in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).

On June 2, 2006, the defendant appeared before United States Magistrate Judge Aaron E. Goodstein for arraignment, entering a plea of not guilty. Pursuant to the pretrial scheduling order issued at that time, the defendant has filed a motion to suppress the evidence obtained as a result of an illegal stop and frisk. (Docket #6). This motion will be addressed herein.

## MOTION TO SUPPRESS EVIDENCE - ILLEGAL STOP AND FRISK AND REQUEST FOR EVIDENTIARY HEARING

Defendant Ruffin, pursuant to Fed. R. Crim. P. 12(b)(3), moves this court for an order suppressing all evidence seized as a result of a search of his person on April 17, 2006, namely, a .380 semiautomatic handgun. (Docket #6). On June 26, 2006, the court conducted an

evidentiary hearing on the defendant's motion to suppress evidence. At the hearing, Milwaukee Police Officer Jesse Egly testified. Based on the evidence presented at the hearing, the court makes the following findings of fact.

### Findings of Fact

On April 17, 2006, at 12:09 a.m., Milwaukee Police Department (MPD) Officers Thomas Maglio and Jesse Egly responded to a report of an armed robbery at 2737 North Martin Luther King Drive in Milwaukee, Wisconsin. The officers, who were in a marked police van in the area, received information over the police radio about a reported armed robbery and the address of the robbery. The officers responded and the dispatcher sent them the assignment over the CAD. The CAD is a mobile data unit with a computer screen connected to the dispatcher.

The officers received a description of the event over the CAD. The CAD entry for 12:09.44 indicates that Kenneth Gaston called in a report of an armed robbery to the Milwaukee Police Department. The report states in relevant part:

> 3RD PARTY RAN - AND TOLD CALLER TAVERN JUST ROBBED - 3RD PARTY NO LONGER ON SCENE - LAST SEEN RUNNING S/B ON MARTIN LUTHER KING - B/M YELLOW/BLK JACKET BJ PANTS LIGHT COMPLX SHORT AFRO 35YOA - CALLER IS ACROSS THE STREET -

(Exhibit 1).

The officers received additional information over the squad radio. They were advised that the subject was seen running southbound from the area so the officers drove around the area for approximately 20 to 30 minutes looking for the person matching the description of the subject. The officer were flagged down by Mr. Gaston, who had remained on the scene. He told the officers that he was the one who had called the police department. Mr. Gaston was on his cell

- 2 -

phone at the time.

Officer Egly asked Mr. Gaston for a description of the subject. Mr. Gaston said he had not been inside the tavern. He stated that an individual had run out of the bar and told him that the bar had been robbed  Mr. Gaston said that the person then ran from the scene. He described the subject as a black male approximately 35 years old with a light complexion and a short Afro wearing a yellow/black jacket and blue jeans. Based on this information and the CAD report, Officer Egly believed that the individual who was reported running from the scene had some involvement in the armed robbery.

The officers then drove northbound on Martin Luther King Drive and observed an individual matching the description of the subject walking northbound. Officer Maglio said, "that looks like him." When the individual saw the officers, he turned around and began walking south on Martin Luther King Drive. The officers turned east off of Martin Luther King Drive and drove southbound through an alley. The officers did not activate the flashing lights on the van.

Shortly thereafter, at 12:34 a.m., Officers Maglio and Egly observed the individual, who matched the description provided on the CAD and by Mr. Gaston, at 216 W. Center Street. The officers stopped the van 20-30 feet from the defendant. At the time the defendant was stopped, Officer Egly did not have his weapon drawn nor did he believe that Officer Maglio had drawn his weapon.

Officer Egly went up to the subject, subsequently identified as the defendant, stating, "Let me see your hands." Officer Egly believed that the defendant was the subject of the armed robbery based on the description he had received and the fact that the person ran from the scene. Officer Egly told the defendant he would be searching him for a weapon and asked the defendant if he had anything on his person. The defendant responded that he had a gun.

Officer Egly told the defendant to turn around and he patted him down. The defendant was facing away from him when he conducted the pat down. Officer Egly patted down the defendant for the safety of the officers.

Officer Egly told the defendant to put his hands in the air. He then pulled the defendant's shirt tight to look for bulges. The shirt was obscuring the defendant's pockets. When Officer Egly pulled the shirt tight, he could see that the defendant's pocket was protruding. He could see inside the pocket and observed a gun handle inside. The gun handle was not protruding from the pocket. Officer Egly recovered a Davis Brand .380 semi-automatic handgun with serial #CP001143 from the defendant's pocket.

Officer Egly obtained basic information from the defendant, but had no other conversation with him. The stop of the defendant was the first time he had seen the defendant that night. The area where the defendant was stopped is a high crime area.

Officer Maglio wrote the report of the incident. The report does not mention that the officers talked to Mr. Gaston, the 911 caller, nor does it indicate that Officer Egly asked the defendant if he had anything on his person.

## **Analysis**

The defendant seeks suppression of evidence, specifically a .380 semi-automatic handgun, seized as a result of the search of his person on April 17, 2006. He contends that the evidence was obtained as a result of an illegal pat down search because the officers did not have a reasonable suspicion that he had committed or was about to commit a crime. The government opposes the motion.

In Terry v. Ohio, 392 U.S. 1, 21 & 30 (1968), the Court held that police officers may conduct a brief, investigatory stop of a suspect if they have knowledge of "specific and

articulable facts which, taken together with the rational inferences from those facts" could cause them to conclude, in light of their experiences, that criminal activity was afoot. See also, Alabama v. White, 496 U.S. 325, 329-30 (1990). "'Reasonable suspicion' must be based on some objective manifestation that the suspect is involved in criminal activity." United States v. Wimbush, 337 F3d 947, 949 (7th Cir. 2003) (citing United States v. Swift, 220 F.3d 502, 506 [7th Cir. 2000]). The court determines reasonable suspicion based on the totality of the circumstances known to the officer at the time of the stop, including the experience of the officers and the characteristics of the subject. United States v. Lenoir, 318 F.3d 725, 729 (7th Cir. 2003). United States v. Jackson, 300 F.3d 740, 745-46 (7th Cir. 2002); see also, United States v. Sokolow, 490 U.S. 1, 8 (1989). "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." Alabama, 496 U.S. at 330.

An investigatory stop must be temporary, lasting no longer than is necessary to effectuate the purpose of the stop. Terry, 392 U.S. at 21-22. The investigative methods employed should be the least intrusive means reasonably available to verify or to dispel the officers' suspicion in a short period of time. Florida v. Royer, 460 U.S. 491, 506 (1983).

Law enforcement officers may conduct a limited pat-down search of individuals subject to investigatory detention in order to determine whether the person is, in fact, carrying a weapon and to neutralize the threat of physical harm. Terry, 392 U.S. at 24-27. Thus, a police officer may conduct a reasonable search for weapons for his safety, "where he believes that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Id. at 27.

Moreover, police can sometimes consider otherwise innocent behavior in determining

- 5 -

whether reasonable suspicion exists to detain an individual. Id. at 22-23. As the Court pointed out in Illinois v. Wardlow, 528 U.S. 119, 125 (2000), the conduct involved in Terry – two men pacing back and forth outside of a store, at times looking in the window and periodically conferring – was ambiguous and subject to innocent interpretation. All of the conduct by itself was lawful, but it also suggested that the individuals were casing the store for a possible robbery. The Court noted that "Terry recognized that the officers could detain the individuals to resolve the ambiguity." Id.

In United States v. Lenoir, 318 F.3d 725 (7th Cir. 2003), the court acknowledged that otherwise innocent behavior can be considered in determining whether reasonable suspicion exists to detain an individual. The court stated: "Specifically, police observation of an individual, fitting a police dispatch description of a person involved in a disturbance, near in time and geographic location to the disturbance establishes a reasonable suspicion that the individual is the subject of the dispatch." Id. at 729 (citing United States v. Juvenile TK, 134 F.3d 899, 904 [8th Cir. 1998] [affirming reasonable suspicion determination when police spotted defendant's car, which matched the police dispatch description, about two blocks away from the scene of the robbery and within five minutes of a second police dispatch concerning the robbery.]). Furthermore, a person's flight upon seeing law enforcement officers approach in a high crime area establishes reasonable suspicion to justify a Terry stop. Wardlow, 528 U.S. at 124; United States v. Quinn, 83 F.3d 917, 924 (7th Cir. 1996).

In this case, the facts show that Officers Maglio and Egly received a report of an armed robbery at 2737 North Martin Luther King Drive. The CAD report indicated that a third party had told the person calling in the armed robbery, Mr. Gaston, that a robbery had occurred. This third party then ran from the scene traveling southbound on North Martin Luther King

- 6 -

Drive. The CAD report provided a description of this third party. Subsequently, Mr. Gaston flagged down the officers who were driving around the area and he told the officers what had occurred. When he was asked for a description of the subject, Mr. Gaston told Officer Egly that he had not been inside the tavern. He explained that an individual had run out of the bar and told him that the bar had been robbed. This person then ran from the area. Mr. Gaston provided a description of this individual which matched the description of the third party reported on the CAD. Officer Egly believed that the individual who ran from the scene had some involvement in the armed robbery.

The officers drove around the area which is known as a high crime area. As they were driving, the officers observed an individual matching the description walking down the street. When the individual, later identified as the defendant, observed the officers, he abruptly turned around and began walking in the opposite direction. After turning the corner and back-tracking through an alley, the officers stopped their van about 20-30 feet from the defendant and exited the vehicle. Officer Egly stopped the defendant. He stated: "Let me see your hands," and the defendant complied. The officer patted down the defendant. In response to Officer Egly's question about whether he had anything on his person, the defendant replied that he had a gun. Officer Egly observed the gun in the defendant's back pocket when he pulled the defendant's shirt which was obscuring his pockets. The pocket was protruding and the officer could see the gun inside the pocket.

Thus, contrary to the defendant's contentions, these factors all combined to create more than enough reasonable suspicion for the officers to initiate a <u>Terry</u> the stop of the defendant. Under the circumstances, Officer Egly could conduct a pat-down search of the defendant for the safety of the officers. Accordingly, the evidence seized as a result of the search of the

- 7 -

Case 2:06-cr-00118-LA    Filed 07/11/06    Page 7 of 8    Document 18

defendant is not subject to suppression. Therefore, this court will recommend that the defendant's motion to suppress evidence be denied.

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant Ruffin's motion to suppress evidence. (Docket #6).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 11th day of July, 2006.

BY THE COURT:

   s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge